1  Allison Lurton, VA Bar No. 39029
Karen Kenmotsu, NY Bar No. 2599306
2  Gretchen Lowe, DC Bar No. 421995
3  1155 21st Street, N.W.
Washington, D.C. 20581
4  202-418-5349 (Lurton)
202-418-5383 (Kenmotsu)
5  202-418-5538 (fax)
6  alurton@cftc.gov
kkenmotsu@cftc.gov
7
Attorneys for Plaintiff Commodity Futures Trading Commission
8
9                    UNITED STATES DISTRICT COURT
10            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
11
12
13  COMMODITY FUTURES TRADING COMMISSION,    **C  05  02142**
14
15                        Plaintiff,          Civil Action No.:
16
17                 v.
18
19  ROBERT JOSEPH BEASLEY and LONGBOAT
20  GLOBAL FUNDS MANAGEMENT, LLC,
21
22                        Defendants.
23
24
25  **Complaint for Permanent Injunction, Civil Monetary Penalties and Other Equitable Relief**
        **Pursuant to The Commodity Exchange Act 7 U.S.C. §§ 1 et seq.**
26
27
28

# I. JURISDICTION AND VENUE

1.      The Commodity Exchange Act (the "Act"), 7 U.S.C. § 6o(1)(A) and (B) (2002) (the "Act") establishes a comprehensive system for regulating the purchase and sale of commodity futures contracts and options on commodity futures. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that, whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

2.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places. In particular, several residents of this District were solicited by the Defendants and are pool participants.

# II. INTRADISTRICT ASSIGNMENT

3.      Pursuant to Civil L.R. 3-2(c), assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claim occurred in the counties of Marin and Alameda. In particular, several residents of Alameda and Marin counties were solicited by the Defendants and invested in the commodity pool operated by the Defendants.

# III. SUMMARY

4.      Since at least December 31, 2002 through July 2, 2004 ("the relevant period"), Robert Joseph Beasley ("Beasley") and Longboat Global Funds Management, LLC ("Longboat") made material misrepresentations to individuals invested in the commodity pool

1 operated by the Defendants ("pool participants") regarding the condition and security of the

2 commodity pool's investments in violation of Section 4o(1)(A) and (B) of the Act.

3     5.      Beasley directly or indirectly controls Longboat and did not act in good faith or

4
5 knowingly induced, directly or indirectly, the acts constituting Longboat's violations alleged in

6 this Complaint, and therefore is liable for Longboat's violations of the Act pursuant to Section

7 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

8     6.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, plaintiff

9 Commodity Futures Trading Commission ("Commission") brings this action against Beasley and
10
11 Longboat (collectively the "Defendants"), to enjoin their unlawful acts and practices and to

12 compel their compliance with the Act. In addition, the Commission seeks civil monetary

13 penalties, restitution to customers for any losses proximately caused by the Defendants' fraud,

14 disgorgement of any ill-gotten gains of Defendants, the appointment of a receiver to assist in the

15
16 identification and maintenance of the pool's assets and such other relief as this Court may deem

17 necessary or appropriate.

18     7.      Unless restrained and enjoined by this Court, the Defendants are likely to

19 continue to engage in the acts and practices alleged in this Complaint and similar acts and

20 practices, as more fully described below.

21
22                                  **IV. THE PARTIES**

23     8.      Plaintiff **Commodity Futures Trading Commission** is an independent federal

24 regulatory agency that is charged with the administration and enforcement of the Act, 7 U.S.C.

25 §§ 1 *et seq*., and the regulations promulgated thereunder.

26
27     9.      Defendant **Longboat Global Funds Management, LLC**, is a registered

28 commodity pool operator ("CPO") and commodity trading advisor ("CTA"), located at 2 North

1  Tamiami Trail, Suite 1200, Sarasota, Florida, 34236. Longboat has been registered as a CPO

2  since April 26, 2001 and as a CTA since October 2, 2001. Longboat operates two commodity

3  pools, Piranha Capital, L.P., ("Piranha" or the "Fund") and Piranha Capital Investment

4  (Bahamas) Ltd. ("Piranha Bahamas").

5

6        10.     Defendant **Robert Joseph Beasley**, who resides at 241 North Shooting Star

7  Circle, Whitefish, Montana, 59937, is founder, president, and CEO of Longboat. Beasley has

8  been registered as an AP of Longboat and has been listed as a principal of Longboat since April

9  26, 2001. On September 20, 2004, the National Futures Association ("NFA") filed a Member

10

11  Responsibility Action ("MRA") against Longboat and an Associate Responsibility Action

12  ("ARA") against Beasley (collectively "the NFA Action") for failure to disclose certain facts to

13  pool participants. The NFA Action, among other things, prohibited Longboat and Beasley from:

14  1) soliciting or accepting any funds from prospective or existing pool participant or customer; 2)

15

16  disbursing any funds from any pool trading accounts or other accounts holding pool funds; 3)

17  making any loans of pool funds or investing in any promissory notes, other debt instruments or

18  real estate; and 4) required Longboat and Beasley to provide copies of the NFA Action taken

19  against them to all pool participants in any pools operated or controlled by Beasley or Longboat.

20  <center>**V. FACTUAL STATEMENT**</center>

21

22     **A.**     **BACKGROUND**

23        11.     Since at least April 2001, Longboat has operated six funds, two of which are

24  identified as commodity pools with the NFA - Piranha and Piranha Bahamas.

25        12.     Piranha's general partner and investment manager is Longboat.

26        13.     Beasley is president and sole principal of Longboat.

27

28

<center>Complaint - 4</center>

**B.   The Piranha Fund**

14.   As of December 31, 2003, Piranha reported that it had sixty-five participants and that it held approximately \$32 million in assets that included short-term promissory notes, securities, and actively traded commodity futures accounts totaling approximately \$9 million.

15.   In Piranha's private placement memorandum, dated January 12, 2001, Longboat states that Piranha is a newly organized limited partnership "that will invest in publicly traded securities and other financial instruments."

16.   Specifically, the memorandum states that Piranha "is designed for private investors with a high net worth, as a means to diversify their portfolios with highly liquid portfolio securities with high return potential."

17.   According to the private placement memorandum, Beasley "will execute the General Partner's [Longboat] investment strategy for the Fund."

18.   Pursuant to the memorandum, Longboat must provide to participants "unaudited monthly report[s] of the Fund's performance and an annual audited financial statement of the Fund certified by an independent public accountant."

19.   In 2001 and 2002, Piranha made loans totaling approximately \$12 million to seven entities that were purportedly used to finance real estate projects in the United States and Nicaragua.  The notes had varying maturity dates and initial interest rates ranging from 8% to 39%.

20.   As of November 3, 2004, none of the Piranha's promissory notes, allegedly secured by security interests in real estate holdings, have been recorded, and therefore Piranha has no perfected security interest securing their promissory notes.

21. Of the $12 million Piranha invested in promissory notes allegedly secured by security interests in real estate holdings, Beasley personally arranged and executed a series of promissory notes on behalf of other entities that he controlled totaling $3.875 million. The notes Beasley arranged and executed do not reference any real estate, are not secured by any real estate, and indicate that they are personally guaranteed by Beasley.

22. Despite the representations in Piranha's private placement memorandum that the fund would make highly liquid investments, the alleged real estate investments totaling $12 million, accounting for more than 50% of the fund's holdings as of December 31, 2003, are actually highly illiquid investments.

23. Furthermore, the series of notes arranged and executed by Beasley reflect loans to entities that he controls. None of the notes to the Beasley controlled entities were paid by their maturity dates and, to date, only one of the notes has been repaid.

24. Finally, fund participants were told that Piranha's promissory notes were secured by the security interest in various real estate holdings, when in fact, no such security interest exists.

**C.   Series of Promissory Notes with Beasley Controlled Entities**

The Initial March 16, 2001 Promissory Note

25. On March 16, 2001, on behalf of Longboat Global Advisors, LLC ("Longboat Global") Beasley executed a promissory note in the amount of $2 million payable to Piranha.

26. Longboat Global is a company owned and operated by Beasley.

27. The March 16, 2001 note between Longboat Global and Piranha ("March 16, 2001 Longboat Note") was due and payable on June 30, 2002, had an interest rate of 12%, and was personally guaranteed by Beasley.

Complaint - 6

1    28.    The March 16, 2001 Longboat Note lists no real property that is security for the

2    note and the note is secured only by Beasley's personal guarantee.

3    29.    The existence of the March 16, 2001 Longboat Note, and the fact that it was

4    personally guaranteed by Beasley, was disclosed to Piranha participants in its 2001 annual

5

6    report.

7    The Subsequent March 16, 2001 Promissory Notes

8    30.    Sometime in 2002, Beasley attempted to replace the initial March 16, 2001

9    Longboat Note with two separate notes between Piranha and two other entities controlled by

10   Beasley, Lewis and Clark Capital, LLC ("Lewis and Clark") and Diamond B Quarter Horse

11

12   Ranch LLC ("Diamond B").

13   31.    Lewis and Clark is wholly owned by Beasley, and he currently owns 80% of

14   Diamond B.

15

16   32.    Sometime in 2002, Beasley created a document purporting to be a promissory

17   note dated March 16, 2001, and executed the note on behalf of Lewis and Clark reflecting an

18   amount of $800,000 payable to Piranha, due and payable on June 30, 2004 ("March 16, 2001

19   Lewis and Clark Note").

20   33.    Attached to March 16, 2001 Lewis and Clark Note, is a document entitled

21

22   "Advance Ledger" that reflects 11 separate withdrawals made pursuant to the original note in

23   amounts ranging from $20,000 to $320,000, totaling $800,000. Each withdrawal listed on the

24   "Advance Ledger" indicates that the withdrawals were made by Beasley between March 16,

25   2001 and October 17, 2001.

26   34.    Sometime in 2002, Beasley also created a second document purporting to be a

27

28   promissory note dated March 16, 2001, and executed the note on behalf of Diamond B reflecting

Complaint - 7

1   an amount of $1.2 million payable to Piranha, due and payable on June 30, 2004 ("March 16,

2   2001 Diamond B Note").

3       35.    Attached to the Diamond B Note is a document entitled "Advance Ledger" that

4

5   reflects 11 separate withdrawals made pursuant to the original note in amounts ranging from

6   $30,000 to $480,000, totaling $1,200,000. Each withdrawal listed on the Advance Ledger

7   indicates that the withdrawals were requested by Beasley between March 16, 2001 and October

8   17, 2001.

9       36.    Neither the March 16, 2001 Lewis and Clark Note nor the March 16, 2001

10

11   Diamond B Note indicate on their face that they are intended to replace the $2 million note

12   Beasley executed on March 16, 2001 on behalf of Longboat Global.

13       37.    Nothing in the March 16, 2001 Lewis and Clark Note or the March 16, 2001

14   Diamond B Note indicates that they are secured by anything other than Beasley's personal

15

16   guarantee.

17       38.    To date only the March 16, 2001 Diamond B, which was in default, has been

18   repaid. Lewis and Clark has not made a principal or interest payments on its March 16, 2001

19   note.

20      The Initial April 1, 2002 Promissory Note

21

22       39.    On April 1, 2002, Beasley executed on behalf of Longboat Global a promissory

23   note in the amount of $2 million payable to Piranha ("April 1, 2002 Longboat Note").

24       40.    The April 1, 2002 Longboat Note was due and payable on March 30, 2003, had an

25   interest rate of 10%, and was personally guaranteed by Beasley.

26

27       41.    The April 1, 2002 Longboat Note lists no real property that is security for the

28   note, and the note is secured only by Beasley's personal guarantee.

1               The Subsequent April 1, 2002 Promissory Note

2         42.     Sometime after April 1, 2002, Beasley attempted to replace the April 1, 2002

3 Longboat Note, with a note between Lewis and Clark and Piranha.

4

5         43.     Beasley created a document sometime after April 1, 2002 entitled "Promissory

6 Note" and dated April 1, 2002, and executed the note on behalf of Lewis and Clark reflecting an

7 amount of $1,875,000 payable to Piranha, due and payable on March 30, 2003 ("April 1, 2002

8 Lewis and Clark Note").

9

10         44.     The April 1, 2002 Lewis and Clark Note lists no real property that is security for

11 the note, and the note is only secured by Beasley's personal guarantee.

12 **D.    Piranha Annual Reports**

13         45.     Beasley and Longboat knowingly, or with reckless disregard, made material

14 misrepresentations and failed to disclose certain facts to pool participants regarding the condition

15 and security of pool investments.

16

17         46.     On December 31, 2002, Longboat issued Piranha's 2002 Annual Report.

18         47.     Piranha's 2002 Annual Report was prepared by Chawla Group, CPAs and signed

19 by Beasley as the managing member of Longboat.

20

21         48.     A description of Piranha's promissory notes is contained in the 2002 Annual

22 Report in a section entitled "Promissory Notes Receivable."

23         49.     The Lewis and Clark and Diamond B promissory notes are contained in this

24 description.

25         50.     In describing Piranha's promissory notes, the 2002 Annual Report states that

26 "[p]romissory notes summarized above are secured by the security interest in various properties

27 both in the U.S. and overseas and by the assets of the borrower."

28

Complaint - 9

51.     The promissory notes between Piranha and Lewis and Clark and Diamond B, totaling $3,875,000, were never secured by a security interest in any property located in the United States or overseas.

52.     There is nothing in Piranha's 2002 Annual Report that discloses to pool participants that Beasley provided a personal guarantee for the Lewis and Clark or Diamond B notes, or that Beasley owns and operates the entities that are the makers of the notes, Lewis and Clark and Diamond B.

53.     On March 29, 2004, Longboat issued Piranha's 2003 Annual Report.

54.     The 2003 Annual Report also contains a list of Piranha's outstanding notes and includes the Lewis and Clark and Diamond B notes.

55.     The 2003 Annual Report also states that "[p]romissory notes summarized above are secured by the security interest in various properties both in the U.S. and overseas and by the assets of the borrower."

56.     The promissory notes between Piranha and Lewis and Clark are still not secured by a security interest in any property located in the United States or overseas, and the notes between Piranha and Diamond D were never secured by a security interest in property located in the United States or overseas.

57.     In addition, the 2003 Annual Report does not disclose to pool participants that Beasley provided a personal guarantee for the Lewis and Clark or Diamond B notes, or that Beasley owns and operates Lewis and Clark and Diamond B.

58.     While in default, in January 2005, Beasley repaid the Diamond B note in full.  To date, Lewis and Clark has not made an interest or principal payment on either of their notes.

Complaint - 10

1     59.   Despite the fact Beasley's companies failed to make timely interest payments on

2 their promissory notes, Longboat continued to "earn" incentive fees based on the accrued interest

3 Beasley's companies were not paying.

4
5     60.   In 2003, Longboat collected $500,476 in management fees and $1,163,027 in

6 incentive fees.

7     61.   The promissory notes between Piranha and Lewis and Clark are currently in

8 default.

9     62.   Until July 2, 2004, Beasley, as president of Longboat, Piranha's general partner,

10
11 failed to disclose to pool participants that he was doing nothing on Piranha's behalf to enforce

12 the terms of the promissory notes and to collect the principal and interest owed to Piranha.

13     63.   Beasley continues to operate Lewis and Clark whose notes are in default to the

14 fund.

15
16     64.   While Beasley disregarded his duties to Piranha's participants by failing to collect

17 interest payments due on promissory notes, Beasley benefited greatly by using the accrued

18 unpaid interest amounts to calculate his management and incentive fees.

19         **VI. VIOLATIONS OF THE COMMODITY EXCHANGE ACT**
20                  **AND COMMISSION REGULATIONS**

21                  **COUNT ONE**

22
23     **VIOLATIONS OF SECTION 4o(1)(A) and (B) OF THE ACT:**
       **FRAUD BY A COMMODITY POOL OPERATOR**

24
25     65.   The allegations set forth in paragraphs 1 through 63 are realleged and

26 incorporated herein by reference.

27     66.   Since December 31, 2002, Defendant Longboat has acted as a CPO by soliciting,

28 accepting or receiving funds from others and engaging in a business that is of the nature of an

investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodities for future delivery on or subject to the rules of a contract market. Defendant Beasley has acted as an associated person ("AP") of a CPO by soliciting prospective pool participants for Longboat.

67. Since December 31, 2002, Defendant Longboat, while acting as a CPO, and Defendant Beasley, while acting as an AP of Longboat employed a device, scheme or artifice to defraud pool participants and prospective pool participants, in violation of Section 4$\underline{o}$(1)(A) of the Act, 7 U.S.C. § 6$\underline{o}$(1)(A).

68. Since December 31, 2002, Defendant Longboat, while acting as a CPO, and Defendant Beasley, while acting as an AP of Longboat, engaged in a transaction, practice or course of business which has operated as a fraud or deceit upon pool participants and prospective pool participants, in violation of Section 4$\underline{o}$(1)(B) of the Act, 7 U.S.C. § 6$\underline{o}$(1)(B).

69. Beasley, directly or indirectly, controlled Longboat and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Longboat's violations of Section 4$\underline{o}$(1)(A) and (B) of the Act. Beasley is therefore liable for these violations pursuant to Section 13(b) of the Act, 17 U.S.C. § 13c(b).

70. The foregoing acts, misrepresentations, omissions and failures of Beasley occurred within the scope of his person's employment or office with Longboat. Longboat is therefore liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B). Each material misrepresentation or omission made during the relevant time period by Beasley, including, but not limited to, those specifically alleged herein, is a separate and distinct violation of Section 4$\underline{o}$(1)(A) and (B).

1

## VII. RELIEF REQUESTED

2

WHEREFORE, the Commission respectfully requests that this Court, as authorized by

3

Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

4

5
6
7

      a)    a permanent injunction prohibiting the Defendants and any other person or entity associated with them, including any successor thereof, from engaging in conduct violative of Section 4o(1) of the Act:

8
9

      b)    an order prohibiting the Defendants from engaging in any commodity-related activity, including soliciting new customers or customer funds or pool participants or pool funds;

10
11
12
13

      c)    an order directing the Defendants to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act or Regulations, as described herein, and interest thereon from the date of such violations;

14
15
16

      d)    an order directing the Defendants to make full restitution to every pool participant whose funds were received by him as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

17
18
19

      e)    a civil penalty against each Defendant in the amount of not more than the higher of $120,000 (or $130,000 for violations occurring after October 24, 2004) or triple the monetary gain to the Defendant for each violation by the Defendant of the Act;

20
21

      f)    an order appointing a receiver to assist in the identification and maintenance of the pool's assets; and

22
23
24
25
26
27
28

g)    such other and further remedial ancillary relief as the Court
      may deem appropriate.

Date: May 24, 2005

Respectfully submitted,

Allison Lurton
Karen Kenmotsu
Gretchen Lowe
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone (202) 418-5000
Facsimile (202) 418-5538
Attorneys for Plaintiff Commodity Futures Trading
Commission

Complaint - 14